Case 4.

## Caulfield *vs.* Bullock.

Pet. Eq.

APPEAL FROM FAYETTE CIRCUIT.

1 An action may be maintained against a judge of an election, where he refuses, when acting in that capacity, to permit a qualified voter to exercise the right of suffrage; but to sustain the action it is necessary to allege and prove that such refusal was knowingly wrongful, and not according to the honest convictions of the judge in respect to his duty.

2. In a suit against a judge of an election, for refusing to let the plaintiff vote, the petition must show that the refusal of the judge to admit the vote to be given, resulted in excluding the plaintiff from the exercise of suffrage. The refusal of one judge of an election to agree that a vote shall be recorded does not necessarily result in its rejection.

3. By the provisions of the *Rev. Stat. chap.* 35, *sec.* 38, the record of naturalization in any other state must be attested by the clerk of the court where it exists, with the seal of the court annexed, if there be a seal, and certified by the judge, chief justice, or presiding magistrate of the court, to be attested in due form.

4. The act of Congress of 1796, prescribing the mode of authenticating records, public acts, and judicial proceedings to be observed in other states, differs from the provisions of the Revised Statutes, and applies to the use of such records, &c., in courts—the Revised Statutes applies to their use in this state, and is applicable to their use for any purpose.

5. The certificate of a clerk of a state court of Kentucky, to the record, is sufficient evidence of naturalization in the state. (*Rev. Stat. chap.* 35, *sec.* 18.)

[The facts of the case are stated in the opinion of the court.—REP ]

*Chas. B. Thomas*, for appellant—

Argued—1. That the duties of a judge of an election was not judicial but ministerial. In every court there must be three constituent parts *actor, reus*, and *judex*—the actor or plaintiff, the *reus* or defendant, and the *judex* a judicial power. (3 *Black. Com.* 35.) The officers of elections act only ministerially. The constitution (*art.* 4) vests the judicial power in courts, "such courts as the general assembly may establish;" and no where in the statutes is an election poll re-

garded or spoken of as a court. (*Jarman vs. Patterson*, 7 *Monroe*, 644, though not an election case, is analogous in principle.)

2. It is not supposed that the 18*th sec. of chap.* 35 *of the Rev. Stat.* has or was intended to have any application to naturalization papers, unless they are offered in courts of justice. This idea is sustained by the *Rev. Stat.* 7 *sec. art.* 3, *on page* 286, which speaks in plain terms of the foreigner "producing his certifi-' cate of naturalization, unless his qualification is ' known to one of the judges or sheriff." It says nothing about records authenticated, as for a trial in court, by the seal and certificate of the judge and clerk, but only the certificate of the clerk in place of one of the officers of the election. In a court the knowledge of the judge, or other officer of the court, would not dispense with a regularly authenticated copy of a record; and this dispensing with the record in the section referred to, shows that it is only some evidence to satisfy the mind of the judges is all that is necessary. It could not have been the intention of the legislature to subject those citizens who had been long naturalized to such extreme inconvenience as to procure the signature of the judge who presided at the granting certificates of naturalization half a century ago in a distant state. The practice has always been, since 1790, to take such evidence upon the certificate of the clerks of the courts certifying the order of naturalization. The court is referred to the case of *Stuart vs Land*, 1 *Cranch*, 299.

Judge STITES delivered the opinion of the court.                    Dec. 9, 1857.

This was an action brought by appellant against appellee for having unlawfully refused, as judge of an election, to receive and record the vote of the former.

The petition states, in substance, that on the 3rd August, 1857, an election was held in the county of Fayette, in this state, for the selection of a member of congress, members of the general assembly, and a state treasurer, and that the plaintiff being then

CAULFIELD
*vs.*
BULLOCK.

and there a free male white cititizen, more than twenty-one years old, and having resided in said county three years, and in the 8th precinct thereof more than sixty days next preceding said election, claimed the right to vote, and made known the above facts to the judges of said election. That having been a foreigner he had been naturalized and admitted to be a citizen of the United States by the court of Common Pleas, held in and for the county of Hamilton, and state of Ohio, on the 26th of March, 1855, and that on the day; and at the place of the said election, he produced and exhibited to the judges thereof a copy of the record of said court, showing his admission as aforesaid, with the seal of said court annexed, and attested by the clerk thereof. Upon the presentation of which the appellee, who was one of the judges of said election in said precinct, because said copy was not certified by the judge of said court of Common Pleas to be attested by the clerk thereof in due form, and for no other reason, and upon no other ground, knowingly and willfully, and with the intent, unlawfully, to deprive the plaintiff of his right to vote, refused to receive his vote, or to permit it to be recorded, whereby he could not and did not vote, &c.

A demurrer was sustained to this petition, and judgment having been rendered against the plaintiff, he has brought the case up.

The sufficiency of the petition is the only subject matter of inquiry, but the proper solution of this inquiry involves necessarily the consideration of several questions:

1st. Is the action maintainable against the appellee for an act performed in a judicial capacity?

2d. If maintainable at all, has the plaintiff shown that the refusal of the defendant to allow the vote operated to deprive him of his elective, franchise? And,

3d. If it did so operate, was not the refusal, under the circumstances, justifiable and proper?

The first point was fully considered in the case of *Morgan vs. Dudley*, (see *post*,) decided at the present term, and our conclusion then was, and now is, that an action can be maintained against a judge of an election where he refuses, when acting in that capacity, to permit a qualified voter to exercise the right of suffrage; but that "to sustain the action it is necessary ' to allege and prove that such refusal was not ac- ' cording to his honest conviction of his duty, and of ' the legal rights of the plaintiff, but knowingly wrong- ' ful, and prompted by impure and corrupt motives."

The allegations of an unlawful intention to deprive the plaintiff of his right to vote, as presented in this case, are substantially similar to those in the case referred to, and are, for the reasons therein stated, deemed broad enough to uphold this action, provided the facts upon which they are predicated are not inconsistent with the allegations, and do not show that the refusal complained of did not necessarily result in depriving appellant of his vote, or if so, that the refusal was justifiable and proper.

2. The law provides that there shall be two judges of the election at each precinct in the county, and declares that "such judges shall superintend the elec- ' tion, determine upon the legality of all the votes ' offered, see that they are properly recorded with the ' voters name in the poll-book kept for that purpose, ' attend to the proper summing up of the votes and ' certify the same, &c.;" and after enumerating other duties incumbent on them provides, in terms, that "when the judges disagree the sheriff shall act as ' umpire between them." (*Rev. Stat.* 285.)

The refusal of one judge to receive a vote does not necessarily operate to deprive the person claiming the right to vote, of such privilege. Such refusal must be concurred in by the other judge, or in case of a disagreement between the judges, must receive the approbation of the sheriff. The concurrence of the two judges, or of one judge and the

CAULFIELD
*vs.*
BULLOCK.

1. An action may be maintained against a judge of an election, where he refuses, when acting in that capacity, to permit a qualified voter to exercise the right of suffrage; but to sustain the action it is necessary to allege and prove that such refusal was knowingly wrongful, and not according to the honest convictions of the judge in respect to his duty.

2. In a suit against a judge of an election, for refusing to let the plaintiff vote, the petition must show that the refusal of the judge to admit the vote to be given, resulted in excluding the pl'tiff from the exercise of suffrage. The refusal of one judge of an election to agree that a vote shall be recorded does not necessarily result in its rejection.

sheriff or umpire, is necessary to exclude the vote. And in an action against a judge for refusing to receive a vote, it should be made to appear that such refusal was concurred in, either by the other judge, or by the sheriff in case the judges disagreed. It is not enough to say that the judge complained of refused, and by reason thereof, that the plaintiff was deprived of his privilege, because such consequence does not necessarily follow, and the averment is nothing more than the averment of a conclusion. The concurrent action of the other judge or sheriff is necessary to such result, and is a fact that will not be presumed in favor of the party plaintiff. It should appear by proper averments.

Here the petition fails to state what action was had by the other judge and sheriff, or either of them, on appellant's application to vote, and from any fact that appears to the contrary, it may be that they were willing to receive his vote, and his failure to enjoy the right was not the result of the defendant's refusal, but of neglect of the plaintiff to demand the opinion of the other officers upon his application. In this respect, therefore, the petition was evidently defective.

3. But a still more serious objection exists to the sufficiency of the petition, and is one too that goes to the foundation of the action.

3. By the provisions of the Rev. Stat. chap. 35, sec. 38, the record of naturalization in any other state must be attested by the clerk of the court where it exists, with the seal of the court annexed, if there be a seal, and certified by the judge, chief justice, or presiding magistrate of the court, to be attested in due form.

If the copy of the record of the proceedings of the Ohio court was not authenticated in such manner as to constitute evidence of the admission of appellant as a citizen of the United States, which was necessary to entitle him to vote, he being, as alleged, a foreigner by birth, and it not appearing from the petition that his qualification as a voter was known to the appellee, it follows that the decision of the appellee as judge of the election upon that point, and which is the only act complained of, was correct, and whatever his motives may have been, such decisio n furnishes to appellant no just cause of complaint.

Whether the authentication of the copy of the record in question was sufficient, and entitled it to faith and credit, as evidence of the naturalization of appellant must depend upon the effect to be given to the 18*th section of the* 35*th chapter of the Revised Statutes*, *page* 313.

That chapter relates altogether to evidence, and prescribes in detail the mode of perpetuating records; what records or books shall be admissible as evidence; how lost records may be supplied; in what manner records and exemplifications of office books in any public office of the United States or of a sister State, not pertaining to a court, shall be attested to be receivable in evidence, and in what mode the records and judicial proceedings of any court of the United States or of any State, shall be authenticated to entitle them to faith and credit, &c.

The 38*th section* provides as follows: "The records and judicial proceedings of any court of the United States or of any State, attested by the clerk thereof, with the seal of the court annexed, if there be a seal, *and certified by the Judge, Chief Justice, or Presiding Magistrate of the court* to be attested in due form, shall have such faith and credit given to them *in this State* as they would have at the place where the said records come."

Until the Revised Statutes took effect there was no statutory enactment of Kentucky on this subject. The act of Congress of 1790, (1*st Stat. Law* 189,) furnished the only rule regulating the mode of authenticating public acts records and judicial proceedings of other States so as to give them effect here. That only differs from the section *supra* in this; the former gives faith and credit to the documents thus authenticated only in *courts,* whereas the latter is not limited in its application to courts, but uses the words "in this State." It may be properly said, therefore, that the rule contained in the section is to be applied whenever and wherever the records and judicial proceedings may be necessary to manifest any right,

4. The act of Congress of 17-90, prescribing the mode of authenticating records, public acts, and judicial proceedings to be observed in other states, differs from the provisions of the Rev. Stat., and applies to the use of such records, &c., *in courts*—the Revised Statutes applies to their use *in this state,* and is applica-

CAULFIELD
*vs.*
BULLOCK.

ble to their use
for any purpose.

or as evidence for that purpose. Any other construction would withhold all effect from the general words "in this State" and violate a well settled rule of construction, which gives effect if possible to all the words of a Statute.

It must be supposed that the revisors had in view the act of Congress referred to, and that, if they intended to limit and restrict the operation of the section *supra* to the use of such documents in *courts* alone, they would have embodied the language of the act in the section, and made no alteration whatever. That would have accomplished the purpose and left the State regulation just as it was fixed by Congress. If, however, any meaning is to be given to the words substituted for those in the act, that must be, that in all cases, and upon all occasions, whether in court or not, where such documents are necessary for any legal purpose, they are to be entitled to faith and credit only when authenticated in the mode prescribed.

The section in question is a rule of evidence general in its character and applicable wherever the evidence spoken of is necessary or offered. The prescription of one mode of authentication, necessarily operates to exclude all others, and whenever the copies offered in evidence are not certified and attested in the mode required, it is neither erroneous nor improper in an officer called on to receive them as evidence to refuse to regard or treat them as such, or as entitled to faith and credit.

5. The certificate of a clerk of a state court of Kentucky, to the record, is sufficient evidence of naturalization in the state. (*Revised Stat. chapter* 35, *sec.* 18.)

The 7*th section* of the chapter concerning elections, (*Rev. Stat.*, 286,) provides, among other things relating to the duties of judges of elections, that a foreigner shall not be exempted from producing his certificate of naturalization unless his qualification is known to one of the judges or the sheriff. Now, if the party has been naturalized in any court of this State, then the copy of the proceedings of such court certified by the clerk thereof, is evidence of such naturalization under the 4*th section* of the same chapter.

But where the naturalization has been had in another State, and the fact is not known to one of the judges or the sheriff, how can they or either one of them say that the certificate produced is the certificate of the applicants naturalization unless authenticated in the mode prescribed by law? Until so authenticated they are not bound to treat it as a certificate, and a refusal so to do does not furnish a cause of action to the party offering it.

It is, therefore, the opinion of this court, that the demurrer of appellee to the plaintiff's petition was rightfully sustained, and the judgment is *affirmed.*